IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JONATHAN BORREGO,

    Plaintiff,

v.                                                     CIV 11-0013 JCH/WDS

ESPANOLA PUBLIC SCHOOL
DISTRICT NO. 45 and JANETTE
ARCHULETA, in her individual
capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment and Memorandum in Support (Doc. 26), filed November 7, 2011. Having reviewed the parties' submissions and the relevant law, the Court finds Defendants' Motion is well-taken and will therefore grant the motion.

**I.    BACKGROUND**

Plaintiff was employed by Defendant Espanola Public School District No. 45 ("EPS") since the 2004-05 school year. *See Doc. 1* at ¶ 9. Defendant EPS issued Plaintiff a "Non-Certified Personnel Contract" for the 2009-2010 school year, providing that Plaintiff would work as a Student Data Systems Manager from July 1, 2009 through June 30, 2010. *See Doc. 26-1* at 1. Plaintiff's contract further provides that it "may be cancelled by the Superintendent for just cause, provided, that any such cancellation may be effected only in accordance with New Mexico law and any applicable rules and regulations of the state Board of Education or of the School District." *Id.* After Defendant Janette Archuleta presented Plaintiff with a letter of termination notifying Plaintiff that he would not be awarded a contract for the 2010-2011 school

year, Plaintiff brought this lawsuit, which alleges interference with Plaintiff's exercise of the Family Medical Leave Act ("FMLA"); retaliation for Plaintiff's attempted exercise of FMLA leave; violations of the New Mexico School Personnel Act; and breach of an implied employment contract.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). *See also Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)). Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in

evidence. Fed. R. Civ. P. 56(c)(2).

The Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment. Fed. R. Civ. P. 56(e). The Court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f).

### III. ANALYSIS

#### A. Undisputed Material Facts

Plaintiff's employment contract for the 2009-2010 school year ("the Contract") expired on June 30, 2010. *See* Doc. 26 at 2, ¶ 1; Doc. 31 at 2-5. The Contract provides for Plaintiff's employment from July 1, 2009 through June 30, 2010. *See* Doc. 26-1 at 1. Plaintiff's last day of work, or the last day he was physically present at work, was June 11, 2010. *See* Doc. 26 at 4, ¶ 17; Doc. 31 at 2-5. Plaintiff received all of the pay to which he was entitled pursuant to the 2009-2010 contract. *See* Doc. 26 at 2, ¶ 2; Doc. 31 at 2-5.

On the morning of June 11, 2010, before meeting formally with Defendant Archuleta later in the day, Plaintiff advised Defendant Archuleta that he was "very stressed out. My back and shoulders were bothering me and I was going to go home and get my doctor's excuse because I needed some time off." *See* Doc. 31 at 5, ¶ 3; Doc. 32 at 3. Plaintiff did not formally request FMLA leave at this time. *See* Doc. 32 at 3. Also prior to his formal meeting with Defendant Archuleta, Plaintiff spoke to his direct supervisor, Charlene Sanchez, about taking FMLA leave. *See* Doc. 31 at 5, ¶ 5; Doc. 32 at 4.

Defendant Archuleta made the decision to terminate Plaintiff's contract at some time

prior to her formal meeting with Plaintiff on June 11, 2010, when she gave Plaintiff written notice of termination. *See* Doc. 26 at 2, ¶ 3; Doc. 31 at 2-5. During the same meeting, Plaintiff provided Defendant Archuleta with a written request for six weeks of FMLA leave. *See* Doc. 26 at 6; Doc. 31 at 6, ¶ 7.

Defendants contend that Plaintiff's contract was not renewed for two reasons. First, the money to compensate Plaintiff came from a grant by Los Alamos National Laboratories, which was intended for student activities relating to science, technology, engineering, and mathematics. *See* Doc. 26 at 5, ¶ 20. Defendant Archuleta felt that Plaintiff's position should be compensated out of the general fund. Second, Defendant Archuleta was reorganizing the business and facilities departments, and she contemplated moving Plaintiff's position to the Office of Curriculum and Instruction and/or assigning his duties to another employee.

Plaintiff believes these explanations were pretext for retaliation on the basis of his requested FMLA leave. First, Plaintiff asserts that Defendant Archuleta's testimony is not sufficient evidence of LANL as the funding source that paid his salary. *See* Doc. 31 at 4 ("Not a single document has been presented by Defendants that shows or proves that Borrego's position with EPS was ever funded by a LANL grant. No such document exists."). Plaintiff submits documents characterizing him as a "classified" employee and a "regular employee," these documents do not indicate that these classifications mean his position was not funded by the LANL grant in question. As Plaintiff offers no evidence to cast doubt upon Superintendent Archuleta's knowledge or qualification to testify regarding LANL funding, the Court will consider the fact undisputed.

Second, Plaintiff disputes Defendants' alleged reorganization of the business and facilities departments, noting that Defendant Archuleta refused to agree in her deposition that his

4

termination was purely "a result of a reorganization in the business office." *See* Doc. 26 at 5, ¶ 23; Doc. 31 at 9. In fact, Defendant Archuleta testified repeatedly that her decision not to renew Plaintiff's contract was due *in part* to her reorganization of the business and facilities departments. *See* Doc. 26 at 5, ¶ 23 (citing Doc. 26-3 at 32:8-18; 79:6-16; 99:1-12). Plaintiff also disregards Defendant Archuleta's March 23, 2010 letter to Plaintiff, which states,

> I am currently exploring options for the reorganization of the Business Office. As part of that reorganization, it has been recommended that your position be transferred to another department. As discussed in our meeting this morning (3/22), the very real possibility exists that your position will be transferred to the Office of Curriculum and Instruction.

*See* Doc. 26-6. Further, Plaintiff admits that his position was ultimately moved into another department within Defendant Espanola Public Schools. *See* Doc. 31 at 4.

**B.     FMLA Interference**

The Family Medical Leave Act ("FMLA") makes it unlawful for an employer to interfere with rights granted by the Act. 29 U.S.C. § 2615(a)(1). "In order to prevail on an FMLA interference claim, the employee must show that she was entitled to FMLA leave and that some action by the employer, such as termination, interfered with her right to take that leave." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011). However, "an employee who requests leave or is on leave has no greater rights than an employee who remains at work." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998). Thus, "an employee may be dismissed, preventing her from exercising her statutory right to FMLA leave—but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002). The employer bears the burden of showing that the employee would have been dismissed regardless of the FMLA request. *See Twigg*, 659 F.3d at 1006-07 (citations omitted).

There is no dispute in the present case that June 11, 2010 was the last day Plaintiff was present at work, *see* Doc. 26 at 4, ¶ 17, and he was granted paid leave from June 11-30, 2010, *see* Doc. 32 at 5.  Plaintiff further admits that "the evidence in this case is that Borrego's 2009-10 contract simply expired on June 30, 2010 and Borrego received all wages due under the contract."  Doc. 31 at 3.  In addition to his wages, however, Plaintiff argues he was entitled to six weeks of FMLA leave upon his submission of an FMLA request on June 11, 2010.  *See* Doc. 31 at 8.  It is Plaintiff's burden to demonstrate his right to FMLA benefits even after the expiration of his contract on June 30, 2010.  *See, e.g., Twigg*, 659 F.3d at 1006.  Yet Plaintiff offers no evidence of his entitlement to additional benefits after the expiration of his contract.  Absent such evidence, Defendants are entitled to summary judgment on Plaintiff's claim for FMLA interference.

      **C.**      **FMLA Retaliation**

To survive summary judgment, Plaintiff must demonstrate that (1) he engaged in protected activity, (2) Defendants took a materially adverse employment action, and (3) there is a causal connection between the two.  *Khalik v. United Air Lines*, ___ F.3d____, 2012 WL 364058 at *4 (10th Cir. 2012) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006)).  Assuming Plaintiff can prove the three-pronged prima facie case, the burden shifts to Defendants to articulate a legitimate non-retaliatory explanation for its actions.  *See id.* (noting that FMLA retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas*).  Then Plaintiff has the opportunity to prove that the Defendant's articulated reason was in fact pretext.  *See id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

      Defendants argue that no causal connection exists between Plaintiff's request for FMLA

leave and Defendants' decision not to renew his contract. *See* Doc. 36 at 6 (arguing that "the undisputed evidence is that [Superintendent Janette] Archuleta had contemplated and decided not to renew Plaintiff's contract prior to the meeting of June 11, 2010," when Plaintiff requested FMLA leave). According to Defendants, Superintendent Archuleta "composed the written notice [of dismissal]—and thus necessarily made the decision not to renew Borrego's contract—before the meeting in which he submitted his FMLA leave request." Doc. 26 at 8. Defendants point out that Superintendent Archuleta attempted to deliver the notice of termination to Plaintiff even before the meeting where he first requested FMLA leave. *See id.* at 3. Further, Superintendent Archuleta handed Plaintiff his pre-printed letter of termination "immediately" after he requested FMLA leave such that she would not have had time to draft the letter after Plaintiff's FMLA request. *See id.* Defendants also indicate that they informed Plaintiff as early as March 2010—months before he sought FMLA leave—that they were considering organizational changes involving Plaintiff's position. *See* Doc. 32 at 1-2 (noting "the very real possibility exists that your position will be transferred to the Office of Curriculum and Instruction").

In Plaintiff's view, his intent to take FMLA leave was clear to Superintendent Archuleta before she composed the letter of termination. Plaintiff claims that he advised Superintendent Archuleta that he was "very stressed out" and that he would be going home on the morning of June 11, 2010 to "get my doctor's excuse because I needed some time off." *See* Doc. 31 at 5. Superintendent Archuleta did not advise Plaintiff during this conversation that she intended to terminate his contract. The same morning, before his formal meeting with Superintendent Archuleta, Plaintiff also spoke to his immediate supervisor, Charlene Sanchez, about taking FMLA leave. *See id.* Plaintiff believes that Superintendent Archuleta could have surmised,

based on Plaintiff's communication that he was going home to get his doctor's note, that Plaintiff intended to take FMLA leave or, alternatively, heard of Plaintiff's intent to take FMLA from Ms. Sanchez.  Thus, in Plaintiff's view, a causal connection could exist between his request for FMLA leave and his receipt of the termination letter, which occurred immediately thereafter.

In the Tenth Circuit, temporal proximity between the protected activity and the alleged retaliation is sufficient to establish causation where these two events occur "very close in time." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006).  Here, the alleged protected activity and the alleged retaliation occurred on the same day, with Plaintiff's receipt of a termination letter occurring immediately after he sought FMLA leave.

Causation does not exist, however, where an employer has previously planned, "though not yet definitively determined," to take adverse action against an employee.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence of causality.").  Here, Superintendent Archuleta testified that she made the decision not to renew Plaintiff's contract on June 11, 2010.  *See* Doc. 26-3 at 2 (32:19-22).

Before June 11, 2010, it is undisputed that Superintendent Archuleta was considering reorganizing the business and facilities departments.  *See* Doc. 26 at 5; Doc. 31 at 4 (purporting to dispute the reorganization based upon Defendant Archuleta's testimony, which the Court has previously found, *see* Part A, *infra*, consistent with reorganization).  Superintendent Archuleta also advised Plaintiff in March 2010 that his position might be transferred to another department. *See* Doc. 26-3 at 9 (98-99).  It is also undisputed that Superintendent Archuleta believed that Plaintiff's position was inappropriately funded by a grant provided by Los Alamos National

8

Laboratories for the purpose of providing science, technology, engineering, and math programs for students. *See* Doc. 26 at 5, Doc. 26-3 at 5 (67:12-19). Likewise, there is no dispute that Superintendent Archuleta felt that Plaintiff's job could be performed by an administrative assistant. *See* Doc. 26-3 at 5 (68:1-11). All of these events undisputedly occurred before Plaintiff advised Defendants that he intended to seek FMLA leave. The Court therefore finds that Defendants had previously planned, "though not yet definitively determined," to take adverse action against Plaintiff. *See Clark County Sch. Dist.*, 532 U.S. at 272. As a result, the Court cannot conclude that temporal proximity alone is sufficient to establish causation for purposes of Plaintiff's prima facie case of retaliation.

Even assuming that Plaintiff satisfied the required elements for a prima facie case, Plaintiff lacks evidence sufficient for a jury to reasonably conclude that Defendants' proffered reasons for not renewing Plaintiff's contract are merely pretext for retaliation on the basis of Plaintiff's requested FMLA leave. Plaintiff purports to dispute LANL's role in funding his position. *See* Doc. 31 at 4. However, Plaintiff does not point to any evidence tending to disprove Defendant Archuleta's testimony, which is based on her personal knowledge. Moreover, it is undisputed that Defendants were considering reorganization and reassignment of Plaintiff's position before Defendant Archuleta determined she would not renew his contract. Summary judgment is therefore appropriate on Plaintiff's claim of FMLA retaliation.

      **D.**    **School Personnel Act**

Because Plaintiff was employed for at least three consecutive years, he contends that just cause was required for his termination. *See Doc. 1* at ¶¶ 58-59 (citing NMSA 1978 § 22-10A-24(D)). Plaintiff argues that "Defendants has neither just cause nor any cause to terminate Borrego's employment with EPS," and that Defendants therefore violated the School Personnel

9

Act. *See id.* at ¶¶ 61-62. Defendants contend they are entitled to summary judgment on this claim because Plaintiff failed to exhaust his administrative remedies. *See Doc. 26* at 11-12. Exhaustion is not required, according to Plaintiff because "Defendant EPS effectively deprived him of any pre- or post-termination due process." *Doc. 31* at 19-20 (citing *Franco v. Carlsbad Municipal Schools*, 130 N.M. 543 (Ct. App. 2001)). Specifically, Plaintiff asserts that "Defendants here provided no notice of contemplated action to Borrego and provided no copy of NMSA 1978, § 22-10A-24." *Id.* at 20. Defendants argue in reply that Plaintiff has not pled a due process claim but rather a claim under the School Personnel Act. *See Doc. 32* at 9-10.

"It is well settled that a teacher must first seek a hearing before the local school board and, if dissatisfied there, appeal from an adverse decision of the local board to the State Board of Education." *Shepard v. Board of Educ. of Jemez Springs Municipal Schools*, 81 N.M. 585, 587, 470 P.2d 306, 308 (1970). *See also* NMSA 1978, §§ 22-10A-24(C) (allowing employees who receive notice of termination to request a hearing before the local school board); 22-10A-24(E) (providing for an appeal concerning the existence of just cause ofr termination). These procedures apply equally to school district employees like Plaintiff who are not certified as teachers. *See* NMSA 1978, § 22-10-24(B).

Plaintiff's Complaint is clear. Count III purports to state a claim for "violations of the New Mexico School Personnel Act." *See Doc. 1* at 8. He argues that the Act requires just cause in order to terminate an employee such as himself, and "Defendants had neither just cause nor any cause to terminate [his] employment with EPS." *Id.* at ¶¶ 58-62. Yet Plaintiff does not dispute his failure to follow the administrative appeal process set out in the School Personnel Act ("SPA"). Although his Complaint contains no mention of a due process violation, *see generally* Doc. 1, Plaintiff argues against summary judgment on his SPA claim by asserting that the SPA

procedures do not apply "where a school district deprives an employee of adequate pre-termination and post-termination process," *see* Doc. 31 at 19.  While this may be true, there is no due process claim before the Court, and Plaintiff's admitted failure to exhaust his administrative remedies renders summary judgment appropriate as to Plaintiff's Count III, purporting to assert violation of the SPA.

### E.  Implied Employment Contract

Although Plaintiff claims he was terminated contrary to Defendants' policies and procedures, Defendants argue that he "fails to show that the termination of his contract had anything to do with the specific District policies and procedures that he lists."  *See* Doc. 26 at 14.  Plaintiff does not respond to Defendants' Motion for Summary Judgment regarding the implied contract claim.  *See generally* Doc. 31.  In fact, Plaintiff's Response states only that "[s]ummary judgment should be denied with respect to the FMLA interference and retaliation claims and the violations of the School Personnel Act."  *See id.* at 2.  Given Plaintiffs' apparent concession, and lacking evidence of any relevant dispute as to the material facts, Defendants' Motion will be granted as to Count IV, and Count IV will be dismissed.

## IV.  CONCLUSION

For the forgoing reasons, the Court finds there is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law on Counts I, II, III, and IV.  The Complaint is therefore dismissed in its entirety, with prejudice.

_____
UNITED STATES DISTRICT JUDGE